

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN 11

**GROVER SELLERS**
ATTORNEY GENERAL

Honorable R. C. Neaves
County Auditor, Grayson County
Sherman, Texas

Dear Sir:

Opinion No. O-5711
Re: Ratification of disburse-
ments by County Tax Assessor
and Collector in administer-
ing the Motor Certificate
of Title Act where advance
approval of the Commissioners'
Court was not secured.

We acknowledge receipt of your letter, which reads, in part, as follows:

"What is the proper method of handling the disbursements paid out direct by the designated agent from the 25¢ fee retained by him under the Certificate of Title Act, as amended by House Bill No. 205, Acts of the 47th Legislature, Regular Session, 1941, during the period from May 1941 to May 1943, without the approval of the Commissioners' Court?

"For your consideration we submit the follow-ing information pertaining to the above question:

"The following letter dated June 14, 1941 was received by the Grayson County Tax Assessor-Collector from D. C. Greer, State Highway Engineer:

"'TO ALL COUNTY TAX ASSESSORS-COLLECTORS

"'SUBJECT: Disposition of the 25¢ collected from Agent for Certificate of Title and Retained by the Assessors-Collectors of Taxes as Designated Agent.

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

"'Gentlemen:

"'Reference is made to Opinion No.O-3561
written by the Attorney General of Texas on
May 29, 1941, in which he holds that the 25¢
retained by the designated Agent of the Highway
Department cannot be considered fees of office
or commissions and as such be paid into the
officers' salary fund.  The opinion further holds
that the designated agent shall be entitled to use
as much of such amounts retained as may be reason-
ably necessary for paying expenses incident to the
efficient performance of the duties imposed upon
him by the Certificate of Title Act and that any
balance of such funds retained after payment of
such expenses shall be forwarded to the State High-
way Department for deposit in the State Highway
Fund.

"'Under the terms of the Act, the Highway Depart-
ment is authorized to promulgate such rules and re-
gulations as it considers necessary and proper to
secure uniform administration of the Act, and in as
much as the fees provided for the issuance of Certi-
ficate of Title are not County funds, we believe it
is the duty of the Highway Department to advise the
Tax Assessors-Collectors in that regard.

"'The Certificate of Title Act, as amended by House
Bill No. 205 and as interpreted by the above Attorney
General's Opinion, creates a very close relationship
between County Tax Assessors-Collectors and the State
Highway Department.  It shall be our endeavor, and we
are sure that it is also your desire that the procedure
and methods followed in accounting for the 25¢ retained
for the purpose of defraying your expenses, be handled
uniformly and accounted for accurately in order to
bring no criticism upon the office of the County Tax
Assessor-Collector or the State Highway Department.

"'We are, therefore, requesting that each of the 25¢
amounts retained by you be deposited in a separate ac-
count.  This account may be kept by you in either the
County Depository or some other local bank in your
county, and we call to your attention that you are per-
sonally responsible for this amount as long as retained
by you, and that you should protect yourself by requir-
ing sufficient collateral from the bank in which you

have deposited this fund. Disbursements may be made from this fund by you for the purpose of paying expenses necessary to efficiently perform the duties required of you in the Certificate of Title Act.

"'We realize that in a number of small counties there is not sufficient title business to warrant the employment of a full-time clerk. In such instances, it is suggested that the clerk assigned these duties be paid proportionately on a part-time basis from title funds and the remainder of the salary be paid out of other fees of your office.

"'We request that an accurate record be maintained by you of all receipts and disbursements under the Certificate of Title Bill. In this connection, we request that you maintain records of disbursements under the following accounts:

> "'1. Salaries
> "'2. Traveling Expenses
> "'3. Postage
> "'4. Telephone and Telegraph
> "'5. Stationery and Office Supplies
> "'6. Printing
> "'7. Bond Premiums
> "'8. Office Furniture
> "'9. Office Machines

"'The Department will request quarterly reports of disbursements classified as above with detailed analysis of salaries, traveling expenses, office furniture and machines, bond premiums, etc. Forms will be furnished to you for this purpose and reports should be made as of June 30, September 30, December 31 and March 31 of each year. It is the Department's further intention to audit these accounts periodically.

"'The Department requests that you submit by June 30, a tabulation of your estimated expenditures or disbursements to be made from your Certificate of Title Fund. This tabulation should cover the period from May 3, through December 31, inclusive, and should set forth in itemized form the positions and salaries to be paid and other estimates in totals as classified by the above accounts.

"'No expenditure should be made in excess of the estimated tabulation submitted to the Department unless the Department is first advised by you. Of course, it is understood that disbursements cannot be made which will

exceed the retained amounts actually on deposit.

"'The balances on hand at the end of each quarter
may be retained until further notice. At the pre-
sent time, it is our intention to close such accounts
on December 31 of each year, with the balance on hand
at that time to be reported and transmitted to the
State Highway Department for deposit to the State High-
way Fund.

"'The Department requests that all deputies em-
ployed by you handling Certificates of Title be bonded
and that the bond premiums be paid from this fund, the
bonds being retained in your possession.' * * *"

Pursuant to our Opinion No. 0-3561, supra, the State High-
way Department required careful accounting for such fees in the
manner detailed in their letter quoted in your letter above. The
State Highway Department informs me that your Assessor and Col-
lector of Taxes complied with their requirements for accounting
for receipts and disbursements of such fees. We quote the fol-
lowing letter received from the Texas Highway Department:

"This is in accordance with your telephone request
of today and is to advise that the records of this
Division reflect that the county tax assessor-collector
of Grayson County submitted to this Department during
the 1941 and 1942 calendar years regular quarterly re-
ports covering his receipts and disbursements of fees
collected and retained by him acting in his capacity
as designated agent of this Department under the provi-
sions of the Texas Certificate of Title Act. These
quarterly reports were submitted in accordance to
instructions issued to all county tax assessor-collectors
by this Department on June 14, 1941, and which instruc-
tions were based on Attorney General's Opinion No. 0-
3561.

"Our records further show that on December 31, 1941,
and December 31, 1942, the county tax assessor-collector
of Grayson County submitted to this Departments checks
in the amount of $1,058.89 and $558.30 covering balances
remaining in his account as of those dates for fees re-
tained by him acting in his capacity as designated agent
of this Department. All such checks submitted to this
Department by various county tax assessor-collectors were

returned to the county tax assessor-collectors
by this Department after the court decision hold-
ing that this Department had no interest in such
fees."

Subsequently, in the case of State v. Glass, 167 S. W.
(2d) 296, rehearing denied January 27, 1943, writ of error re-
fused, the Court of Civil Appeals held that the assessor and
collector of taxes in discharging the duties required of him
under the Certificate of Title Act is not discharging any du-
ties pertaining to any separate agency or office, but that all
such duties required of him are merely duties added by the statu-
tes to the office of assessor and collector of taxes; and that
such fees were to be accounted for by him to the county in the
same manner as other fees.

This decision overruled our Opinion No. 0-3561, a copy
of which is enclosed herewith.

Since under this decision fees earned by the county tax
assessor and collector under the Certificate of Title Act must
be regarded like any other fees earned by him, we now know that
the fees ought to have been paid into the Officers' Salary Fund,
Article 3912e, Section 5. Articles 3899 and 3902, Vernon's Anno-
tated Civil Statutes, ought to have been followed in expending
such funds.

Article 3899 provides that a salaried county assessor and
collector of taxes is permitted to purchase or charge to his
county all reasonable expenses necessary in the proper conduct
of his office, such expenses to be paid as predetermined and al-
lowed, in the amounts, as nearly as possible, by the commissioners'
court once each month for the ensuing month upon application by
the officer, such purchases to be made by such officer when al-
lowed only by requisition and in the manner provided by the
county auditor; and requires each such officer to make an itemized
and sworn report of all approved expenses incurred by him.

Article 3902 requires that county officers needing the
services of deputies shall apply to the commissioners' court for
authority to appoint such deputies, and the court is then au-
thorized to allow the appointment of such deputies and to fix
their salaries.

The situation confronting you then is this: the county
tax assessor and collector hired deputies to administer the du-
ties placed upon his office by the Certificate of Title Act and

paid them out of the fees collected by him under that Act, without the employment of such deputies having been previously authorized by the commissioners' court and without his having turned such fees into the proper county funds.

The action of the assessor and collector of taxes was made in reliance upon our opinion and was made in entire good faith on his part. The State has had the benefit of the money and it was expended for the purpose for which it was intended by the Legislature. No claim of mis-use of fraud or bad faith is made against him.

In the case of Manion v. Lockhart, Treasurer, 131 Tex. 175, the State Treasurer, acting on an opinion rendered by the Attorney General, deposited certain escheat funds in the general revenue fund of the State. The Court decided that the general revenue fund was not a proper repository for such escheat funds, but the Supreme Court refused to grant a writ of mandamus to compel the State Treasurer to pay these funds to the claimant. In its opinion the Court placed great emphasis on the fact that it was upon the advice of the Attorney General that the Treasurer had deposited the money in the general revenue fund of the State; that he had in no manner profited by such action on his part; that he had acted in entire good faith and did not any longer have the funds in his possession. The Court continued:

"Having complied with the advice of the Attorney General, in making such transfer of funds, it would be both unjust and unfair to undertake by writ of mandamus to compel the Treasurer to pay this amount of money out of his personal funds. It was contrary to law for the funds to be deposited in the general revenue fund, as was done, but they have passed beyond the control of the Treasurer, and it is now impossible for the Treasurer to pay to relator the amount of funds so deposited with him.

"The rule is well settled that a writ of mandamus will not issue to compel a respondent to do something that it is impossible for him to do, and the issuance of such writ of mandamus would be fruitless."

The Court had previously passed upon the authority of the commissioners' court to ratify expenditures made where prior consent was not obtained by the county officer. In Cameron County v. Fox, (Com. App.) 61 S. W. (2d) 483, Cameron County brought suit

against Fox, its Tax Assessor, for salaries paid by Fox to
his deputies for the years 1920 to 1926. The deputies were
paid from fees of office collected by Fox. At the trial it
was contended by the county that the Tax Assessor was not en-
titled to credit for the salaries paid to deputies because he
did not make application to the commissioners' court for au-
thority to appoint deputies and the commissioners' court had
not granted such authority as required by statute. See Arti-
cle 3902, supra. The Court continued:

> "* * * Nor does it appear that the commis-
> sioners' court, at any time during said period,
> entered an order fixing the number of deputies
> to be appointed or fixing the amount of their
> salaries, as the statute prescribed. The county
> insists that, because the current statutory pro-
> visions in the various respects stated were not
> met, Fox is not entitled to the credit claimed
> by him, and that the sums retained by him, on ac-
> count of said salaries, are unlawfully retained.
> * * *"

The Court ruled:

> "* * * Assuming that the commissioners' court,
> in auditing and settling the accounts of Fox, ap-
> proved the amount of salaries paid by him to his
> deputies, such approval, we think, would satisfy
> the statute. What the commissioners' court could
> have authorized in the beginning that court could
> subsequently ratify. Although we are satisfied
> that compliance by the tax collector, with the
> provisions of the statute regarding the applica-
> tion for authority to appoint deputies was intended
> by the Legislature to be a condition precedent to
> the tax collector claiming credit, as a matter of
> right, for salaries paid his deputies, we are fur-
> ther satisfied that those provisions were not in-
> tended to operate as a condition precedent to the
> exercise of power by the commissioners' court to
> approve the amount of salaries paid by the tax col-
> lector from the fees of office collected by him, and
> to allow him credit therefor. So far as the action
> of the commissioners' court in doing this is con-
> cerned, the previous lack of authority in the tax
> collector, in respect to said salaries, would be
> immaterial. Affirmative action in this respect,
> by the commissioners' court as such, would bind

the county just the same. * * *"

State v. Carnes, 106 S. W. (2d) 397, was an action on behalf of Wilson County against its former sheriff to recover certain sums paid by him and certain fees retained by him as deductions. Part of the cause of action was based upon $200 paid a deputy sheriff:

"While the deputation records do not show his appointment and the minutes of the commissioners' court do not reveal any order fixing his compensation, this item was claimed as a deduction in Carnes' annual report for 1931, which report was duly approved by an order of the commissioners' court."

The Court held:

"While the entry by the commissioners' court of an order authorizing the appointment of deputies and fixing their compensation upon proper application by the officer in accordance with article 3902 is a condition precedent to his claiming credit, as a matter of right, for salaries paid his deputies, this statutory provision was not intended as a limitation on the power of the commissioners' court, and any affirmative action of the county authorizing or approving the expenditure before or after it was incurred would bind the county and authorize the deduction. The commissioners' court may ratify that which it might have authorized originally. Cameron County v. Fox (Tex. Com. App.) 61 S. W. (2d) 483."

The sums returned to the tax assessors and collectors of taxes by the Texas Highway Department will, if this has not already been done, have to be turned over to the Officers' Salary Fund of Grayson County. State v. Glass, 167 S. W. (2d) 296; Article 3912e, Section 5, Vernon's Annotated Civil Statutes. We are clear that when this has been done the commissioners' court

taking into consideration that the fees collected were actually spent for the purpose intended by the Legislature, that the assessor-collector of taxes acted in good faith and did not profit, or seek to profit, by his acts, is in law, as well as in good conscience and fair dealing, authorized to ratify such expenditures made by the assessor and collector of taxes in administering the Motor Certificate of Title Act.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By David W. Heath

David W. Heath
Assistant

DWH:KP

Encl.



APPROVED
OPINION
COMMITTEE
BY BWB
CHAIRMAN